UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
SEAN DUCHEMIN,

                      Plaintiff,                          **MEMORANDUM OF**
                                                      **DECISION AND ORDER**
      -against-                                 14-cv-5976(ADS)(SIL)

INCORPORATED     VILLAGE     OF     EAST
HAMPTON,

                        Defendant.
--------------------------------------------------------------------x

**<u>APPEARANCES:</u>**

**LAWRENCE E. KELLY, ESQ.**
*Attorney for the Plaintiff*
11 Cedar Bay Court
Bayport, NY 11705

**DEVITT SPELLMAN BARRETT, LLP**
*Attorneys for the Defendants*
50 Route 111
Smithtown, NY 11787
        By:    Anne C. Leahy, Esq., Of Counsel

**SPATT, District Judge:**

    On October 14, 2014, the Plaintiff Sean Duchemin ("Duchemin" or the "Plaintiff") commenced this action against his employer, the Defendant the Incorporated Village of East Hampton (the "Village" or "Defendant"), alleging employment discrimination and civil rights violations because of an alleged disability.

    On February 26, 2015, the Plaintiff filed an amended complaint, which is now the operative pleading in this case.

On April 8, 2015, the Village filed a motion, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), to dismiss the amended complaint for failing to state a claim upon which relief may be granted.

The motion was fully briefed on May 18, 2015, and is presently before the Court.

## I.     Background

The following facts are drawn from the amended complaint and are construed in favor of the Plaintiff.

Beginning in or about May 2003, Duchemin was employed by the Village as a Public Safety Dispatcher. The amended complaint does not allege any facts relating to the nature of this position or Duchemin's job responsibilities. However, it is alleged that the Village employs approximately 17 Public Safety Dispatchers, who are organized as a department under the control of the Village's Police Department (the "EHPD").

Duchemin allegedly was a member of a union, and his employment was governed by the terms of a collective bargaining agreement (the "CBA"). Although not annexed to the amended complaint, it is alleged that the CBA contains a provision which entitles Duchemin to 365 days of paid leave in the event of a "catastrophic" medical condition. It is further alleged that the CBA contained a provision which provides for "unlimited sick leave," although no related details are supplied.

In February 2013, Duchemin allegedly suffered an unspecified non-work related injury. The amended complaint contains no factual allegations relating to the nature or severity of this alleged injury. However, on an unspecified date, Duchemin apparently underwent hip surgery.

On February 25, 2013, one Gerard Larsen Jr. ("Larsen"), the EHPD Chief of Police, allegedly authored a memorandum relating to the Plaintiff's injury (the "Larsen Memo"). According to the amended complaint, the Larsen Memo stated that, pursuant to the relevant portions of the CBA, Duchemin was being placed on leave by the Village, and was entitled to receive 365 calendar days of catastrophic illness pay, effective March 7, 2013. A copy of the Larsen Memo is not annexed to the amended complaint.

The amended complaint alleges that, at some unspecified time prior to his hip surgery, the Plaintiff participated in a sleep study at Stony Brook University Medical Center ("SBUMC"). Although not made clear in the amended complaint, it appears that his decision to participate in this study was related in some way to his being overweight. See Am. Compl. ¶¶ 91-92 (alleging that "a large majority of Americans are either overweight or obese" and, as a result "their sleep patterns may be impacted, in many instances resulting in mild, moderate or severe obstructive sleep apnea"); id. ¶ 93 (alleging that "[a]s a result of planning for hip surgery," he participated in the sleep study).

Apparently, the results of the study were consistent with obstructive sleep apnea and, in or about April 2013, Duchemin allegedly was treated for this

condition by one Dr. Mohammad M. Amin, a pulmonary and sleep specialist with SBUMC. It is alleged that, on or about April 5, 2013, Dr. Amin completed a form entitled "East Hampton Village Police Department Transitional Duty—Medical Fitness Application" (the "Fitness Application"), in which he noted that he had diagnosed Duchemin with "sleep apnea and severe daytime sleepiness." The Court notes that neither Dr. Amin's treatment notes nor the Fitness Application is annexed to the amended complaint.

In July 2013, Duchemin allegedly began taking steps to return to work. In this regard, he allegedly anticipated that the Village would require him to supply written confirmation by a physician that he was fit for duty and, to that end, arranged to visit his personal treating physician, one Dr. Ralph Gibson. According to the amended complaint, Dr. Gibson advised the Plaintiff that he was, in fact, fit for duty and could return to work. However, before issuing a doctor's note to that effect, Dr. Gibson allegedly requested that Duchemin provide him with additional information concerning the Village's requirements for the form and content of such a note.

Allegedly, when Duchemin contacted the Village for the purpose of obtaining the information requested by Dr. Gibson, an unidentified Village representative advised him that the Village would provide such information directly to Dr. Gibson, "as they already had a matter to discuss with him." Am. Compl. ¶ 37.

Apparently, on some unspecified date, the Plaintiff again visited Dr. Gibson. According to the amended complaint, Dr. Gibson advised Duchemin that, after their

last visit, Larsen had contacted him and warned him that providing the requested fit-for-duty note would "endanger Dr. Gibson's medical practice." Am. Compl. ¶ 41. In light of Larsen's alleged threats, Dr. Gibson did not issue a doctor's note clearing Duchemin to return to work. The Plaintiff alleges that he did not authorize Larsen or any other Village official to discuss his medical status with Dr. Gibson.

Following this incident, Duchemin allegedly arranged to be seen by one Dr. William Blake Kerr, the owner of a walk-in medical clinic in Wainscott, New York. Duchemin alleges that he was examined by a nurse during this visit, but not by Dr. Kerr. It is alleged that Dr. Kerr "volunteered" to Duchemin that he had been contacted by Dr. Gibson, who related Larsen's threats about endangering the medical practice if he cleared Duchemin to return to work. The amended complaint vaguely references an August 9, 2013 report prepared by Dr. Kerr. However, no related factual details are provided and a copy is not annexed to the pleading.

The amended complaint further alleges that, on some unspecified date, the Plaintiff learned that Village police officers had entered a local pharmacy and obtained information relating to his medical condition, including the names of medications that he took and the name of the doctor who had prescribed them. The Plaintiff does not provide any supporting factual details, such as how he learned of this occurrence. However, he alleges that he did not authorize Larsen or any other Village official to obtain information from the pharmacy concerning his medical condition.

The amended complaint also alleges that, on another unspecified date, the Plaintiff observed two undercover Village police vehicles following him as he traveled from a medical appointment at SBUMC to his home in Sag Harbor. Allegedly, Duchemin later identified the drivers of the vehicles as a lieutenant and a detective with the EHPD. However, the names of these individuals are not set forth in the amended complaint and the Plaintiff does not provide any related details, such as how he was able to positively identify them.

The amended complaint further alleges that, at some unspecified time, an unidentified Executive Assistant at SBUMC stated that she had received a phone call from an individual claiming to be the Village Chief of Police. Duchemin does not identify whether this statement was made to him or whether he learned of it by some other means. However, apparently, the caller demanded copies of Duchemin's medical records and sleep study results. The unnamed assistant refused, allegedly causing the caller to become angry. Again, the Plaintiff does not provide any supporting factual details, such as how he learned of this occurrence. However, he alleges that he did not authorize Larsen or any other Village official to obtain records from SBUMC concerning his medical condition.

On or about September 20, 2013, the Village allegedly placed Duchemin on unpaid leave pursuant to section 72(5) of the New York Civil Service Law. The Court will take judicial notice of this statutory provision, which provides, in relevant part, that:

if the appointing authority determines that there is probable cause to believe that the continued presence of the employee on the job represents a potential danger to persons or property or would severely interfere with operations, it may place such employee on involuntary leave of absence immediately.

N.Y. Civ. Serv. L. § 72(5).

Allegedly, the Village's decision was communicated to the Plaintiff in a letter prepared by one Rebecca Molinaro, the Village Administrator (the "Molinaro Letter"). A copy of the Molinaro Letter is not annexed to the amended complaint, but is selectively quoted by the Plaintiff. In particular, according to the amended complaint, the Molinaro Letter indicates that the Village's decision to place Duchemin on unpaid leave was based on his "diagnosis with sleep apnea and narcolepsy." See Am. Compl. ¶ 52. The Court will take judicial notice of the fact that narcolepsy is a disorder characterized by "recurrent, uncontrollable, brief episodes of sleep." Woodcock v. Astrue, 11-cv-700, 2012 U.S. Dist. LEXIS 132437, at *8-*9 n.10 (M.D. Pa. 2012) (quoting DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1232 (32nd ed. 2012)). Apparently, according to the Molinaro Letter, this determination was based, in part, on an August 20, 2013 report prepared by Dr. Gibson. A copy of this report is not annexed to the amended complaint.

Although not clear from the pleading, it appears that Dr. Gibson's act of furnishing a report to the Village, upon which it relied to place Duchemin on unpaid leave, forms the basis of the following allegation by the Plaintiff: ". . . between July 3, 2013 and August 20, 2013, it is apparent that Dr. Gibson was working as a

cooperative witness for Police Chief Larsen, an apparent conflict to his role as a treating physician for" the Plaintiff. Am. Compl. ¶ 74.

Further, the Plaintiff alleges that the Village's reliance upon the Civil Service Law was pretextual; that, in fact, the Village simply desired not to continue paying him for the full 365 days of medical leave to which he was entitled, plus "unlimited sick time" that he may have taken thereafter. In this regard, Duchemin alleges unequivocally that he has never been diagnosed with narcolepsy, as reflected Dr. Amin's treatment notes and the Fitness Application.

The amended complaint further alleges that, on another unspecified date, Larsen contacted Duchemin's estranged wife at her place of work. Allegedly, Larsen sought to have the wife pressure Duchemin into resigning from his position with the Village.

Further, it is alleged that, on an unspecified date, an unidentified representative of the Village made a report to the New York State Department of Motor Vehicles (the "DMV"), which related to the Plaintiff. Allegedly, the Village reported to the DMV that the Plaintiff suffers from narcolepsy. The Plaintiff alleges that the Village's actions in this regard were intended to bring about an official review of his capacity to operate a motor vehicle and, ultimately, a suspension of his driver's license.

It is alleged that, after the Village made this report, Duchemin participated in additional sleep studies at Mather Memorial Hospital in Port Jefferson, New York, and, ultimately, his license was not suspended. However, he states that, as a

result of these sleep tests, one Dr. Nick Patel prepared a statement "indicating [that] the July 3, 2013 incident raised by East Hampton Village appeared unrelated to any sleep condition" of the Plaintiff. Am. Compl. ¶ 99. Importantly, aside from this passing reference, the amended complaint does not explain, or even mention, this "incident."

Further, on some unspecified date in 2014, Duchemin allegedly obtained medical clearance from an unidentified physician and returned to work. He alleges that, upon returning to work," he was "confronted with a hostile work environment," which included being subjected to certain "investigations and interrogations." The amended complaint fails to provide any other supporting factual details relating to the alleged hostile work environment.

On March 10, 2014, Duchemin filed a charge of discrimination with the United States Equal Opportunity Commission (the "EEOC Charge"). A copy of the EEOC Charge was attached to the amended complaint and an additional copy was provided to the Court upon request. Relevant here, the EEOC Charge contains various boxes that a complainant may "check" to indicate the alleged cause of the discrimination. Duchemin checked the box labeled "disability." He also wrote the following in a field labeled "[o]ther reason for discrimination": " 'Sick.' A falsified Dr. letter was submitted by my/their Dr. without a HIPAA form."

Based on these brief descriptions of alleged discrimination, Duchemin alleges in his pleading that the EEOC Charge was "based upon a disability, in that [he] had certain disabilities during a certain period of time, or that although [he] has no

disabling physical condition which impacts on his job performance, [the Village] treats him as if he is disabled in a discriminatory fashion." Am. Compl. ¶ 12. The Court notes that the EEOC Charge does not indicate which federal antidiscrimination statutes, if any, Duchemin claimed had been violated by the Village's conduct.

On or about July 15, 2014, the EEOC issued to the Plaintiff a Dismissal and Notice of Rights letter (the "Right to Sue Letter"). The one-page Right to Sue Letter is annexed to the amended complaint. According to the Right to Sue Letter, the EEOC conducted an investigation and was unable to conclude that the information Duchemin had supplied established violations of any relevant statutes. Accordingly, the EEOC notified the Plaintiff that it was closing its file. The Right to Sue Letter also advised Duchemin that he had the right to commence a lawsuit in connection with his allegations within 90 days of his receipt of the letter.

Duchemin alleges that he "is considered by law to have received" the Right to Sue Letter on July 18, 2014, but cites no supporting legal authority for that statement. In any event, the original complaint was filed 88 days later, on October 14, 2014.

The original complaint alleged three causes of action: (i) disability discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (ii) malicious abuse of process; and (iii) defamation of a constitutional magnitude, also known as a "stigma-plus" claim, which is premised on the theory that the injury to Duchemin's reputation from the

Village's defamatory statements constitutes a deprivation of a liberty interest protected by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983 ("§ 1983").

On or about January 29, 2015, the Village filed a motion, pursuant to Fed. R. Civ. P. 12(b)(6), seeking to dismiss the original complaint for failing to state a claim upon which relief may be granted. Among other things, the motion to dismiss correctly asserted that Title VII does not protect against disability discrimination.

On February 26, 2015, the Plaintiff filed an amended complaint, which rendered the Village's motion to dismiss moot. Notably, the amended complaint neither materially altered any of the factual allegations set forth in the original complaint, nor added any new facts. Rather, as Duchemin concedes, the only discernible difference between the two pleadings is the legal theories that he asserts. In particular, the amended complaint replaced the first cause of action based on Title VII with a factually identical claim based on the Americans with Disabilities Act, 42. U.S.C. § 12101 *et seq.* ("ADA"). Also, the amended complaint consolidated the second and third causes of action, based on malicious abuse of process and "stigma-plus" reputational injury, respectively, and reframed them as a single "stigma-plus" claim based on a deprivation of his Fourteenth Amendment right to liberty in violation of § 1983.

As noted above, on April 8, 2015, the Village filed a second motion, also pursuant to Fed. R. Civ. P. 12(b)(6), again seeking to dismiss the amended complaint. In particular, the Village contends that: (i) the first cause of action

based on disability discrimination should be dismissed as time-barred because Duchemin failed to assert a claim under the ADA within 90 days of receiving the Right to Sue Letter; and (ii) the second cause of action based on a deprivation of Duchemin's Fourteenth Amendment rights should be dismissed because it lacks sufficient factual support to plausibly state a claim for relief.

For the reasons set forth in this opinion, the Court grants the Village's motion to dismiss.

## II.  Discussion

### A.  The Applicable  Legal Standards

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted."  "To survive a motion to dismiss, the complaint must plead 'enough facts to state a claim to relief that is plausible on its face,' <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)."  <u>Otis-Wisher v. Medtronic, Inc.</u>, 14-cv-3491, 2015 U.S. App. LEXIS 9565, at *2 (2d Cir. June 9, 2015).

With this standard in mind, the Court now turns to the parties' various contentions.

### B.  As to Whether the First Cause of Action for Disability Discrimination is Time-Barred

The Village contends that the first cause of action should be dismissed because the Plaintiff failed to timely assert a claim under the ADA within 90 days

of receiving the Right to Sue Letter. In this regard, the Village points out that the original complaint, which was filed within the relevant 90-day period, only asserted a violation of Title VII, which does not apply to allegations of disability discrimination. The Village further asserts that Duchemin improperly asserted a violation of the ADA for the first time in the amended complaint, which was filed after the expiration of the 90-day limitations period.

The parties do not dispute that the original complaint did not contain a cause of action seeking relief under the ADA. There also is no dispute that the amended complaint, which *does* seek relief under the ADA, was filed after the relevant 90-day limitations period. Thus, the only question before the Court is whether, under these circumstances, the limitations period can and should be equitably tolled to save the Plaintiff's disability discrimination claim from dismissal.

" '[E]quitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights.' " Kalola v. IBM, 13-cv-7339, 2015 U.S. Dist. LEXIS 27444, at *12 (S.D.N.Y. Feb. 4, 2015) (quoting Zerilli-Edelgass v. N.Y.C. Transit Auth., 333 F.3d 74, 80 (2d Cir. 2000)); see Hannah v. Wal-Mart Stores, Inc., 969 F. Supp. 2d 229, 233 (D. Conn. 2013) ("Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances" (quoting Collazo v. Sikorsky Aircraft Corp., 03-cv-1620, 2004 U.S. Dist. LEXIS 12328, at *6 (D. Conn. June 23, 2004)). The Plaintiff bears the burden of showing [that] the application of the doctrine is appropriate. See Kalola, 2015

U.S. Dist. LEXIS 27444, at *12 (citing <u>Bolarinwa v. Williams</u>, 593 F.3d 226, 232 (2d Cir. 2010); <u>Boos v. Runyon</u>, 201 F.2d 178, 185 (2d Cir. 2000)).

In his opposition, Duchemin fails to address the issue of equitable tolling. Rather, he asserts only that the ADA claim in his amended complaint should "relate back" to the date of the original complaint for statute of limitations purposes. In this regard, the Plaintiff asserts that the facts set forth in the original complaint are "reasonably related" to disability discrimination, which was raised in the EEOC Charge, and, therefore, were sufficient to place the Village on notice of the nature of his claim, despite the fact that he incorrectly invoked Title VII instead of the ADA.

The Plaintiff's analysis in this regard is misplaced. In particular, he conflates the standard for equitable tolling – which, as noted above, applies only in rare and exceptional circumstances – with the "reasonably related" standard that applies where a civil rights plaintiff attempts to assert discrimination claims in federal court that he did not previously assert to the EEOC. In the latter instance, as the Plaintiff correctly notes, a district court only has jurisdiction to hear claims brought pursuant to the ADA that are either: (i) contained in the EEOC charge; or (ii) "reasonably related" to the claims in the EEOC charge. <u>See</u> <u>Agosta v. Suffolk County</u>, 981 F. Supp. 2d 167, 172 (E.D.N.Y. 2013) (Spatt, J.) (citing <u>Brown v. Coach Stores, Inc.</u>, 163 F.3d 706, 712 (2d Cir. 1998); <u>see</u> <u>Stewart v. United States INS</u>, 762 F.2d 193, 198 (2d Cir. 1985) (noting that "district courts may assume jurisdiction over a claim 'reasonably related' to a charge filed with the EEOC, including

incidents occurring after the filing of the EEOC claim") (citing <u>Almendral v. New York State Office of Mental Health</u>, 743 F.2d 963, 967 (2d Cir. 1984); <u>Kirkland v. Buffalo Bd. of Educ.</u>, 622 F.2d 1066, 1068 (2d Cir. 1980)).  Relying on this standard, the Plaintiff seeks to avoid dismissal by contending that the allegations in his original complaint were "reasonably related" to the disability discrimination specified in the EEOC Charge.

In this regard, the Court notes that the "reasonably related" standard is not relevant to the question of whether equitable tolling is appropriate.  Thus, in the absence of any relevant supporting argument by Duchemin, the Court cannot justifiably conclude that he satisfied his burden of showing that this case presents the sort of rare and exceptional circumstances that warrant application of the equitable tolling doctrine.

Nevertheless the Court notes the following guiding principles, which are relevant to its determination:

> Equitable tolling is generally considered appropriate where the plaintiff pursued judicial remedies but filed a defective pleading during the specified time period, where the plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant, or where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion.  When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.

<u>Collazo</u>, 2004 U.S. Dist. LEXIS 12328, at *7-*8 (quoting <u>Zerilli-Edelgass</u>, 333 F.3d at 80-81).

In the Court's view, even if the Plaintiff had articulated a recognized ground for applying equitable tolling – for example, that his original complaint, although defective, was timely filed – there is no rational basis for concluding that he acted with reasonable diligence during the time he seeks to have tolled, or that he has shown the circumstances to be so extraordinary that the doctrine should apply. In fact, in the Court's view, the Plaintiff's written submissions demonstrate that the opposite is true.

It is clear from the record that the Plaintiff filed the EEOC Charge, which identified an unspecified disability as the basis for his alleged discrimination, and then waited 88 days into the 90-day limitations period before filing a complaint in this Court, which failed to assert any claims based on violations of the federal disability discrimination statutes. The Plaintiff did not recognize this deficiency for approximately three months until the Village moved to dismiss the original complaint on the ground, among others, that Title VII does not protect against disability discrimination. The Plaintiff then filed an amended complaint with identical factual assertions, this time seeking relief under the ADA.

When the Village again moved to dismiss, the Plaintiff did not attempt to set forth facts demonstrating any extraordinary circumstances or that the relief the Village seeks would yield an inequitable result. Rather, he refers to his own failure to seek relief under the appropriate statute as a mere "scrivener's error" and states that "the only item" missing from an otherwise sufficient original complaint was an invocation of the ADA. The Court finds these contentions to be unavailing,

particularly in light of the fact that Duchemin has been represented by experienced counsel at all relevant times.    Cf. South v. Saab Cars USA, 28 F.3d 9, 11-12 (noting that a lack of due diligence on the part of the Plaintiff's attorney is insufficient to justify application of an equitable toll) (citing Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990)).

Based on the foregoing, the Court finds that the Plaintiff has not carried his burden of showing that the facts and circumstances of this case warrant equitable tolling of the 90-day limitations period applicable to claims under the ADA. Accordingly, in the Court's view, the first cause of action is dismissed as time-barred.  The motion by the Village to dismiss the first cause of action on this ground is granted.

## C.    As to Whether the Second Cause of Action Plausibly States a Claim for a Deprivation of Duchemin's Constitutional Liberty Interest

As noted above, Duchemin's second cause of action alleges defamation by the Village that reached constitutional dimensions.  This type of claim, a so-called "stigma-plus" claim, is rooted in the idea that the injury to a plaintiff's reputation – i.e., the "stigma" – may have constitutional implications if it is accompanied by some other adverse governmental action – i.e., the "plus" – such as a denial of due process.  A "stigma-plus" claim arises under 42 U.S.C. § 1983 because, if proven, it constitutes a deprivation of a liberty interest protected by the Fourteenth Amendment.

Against this backdrop, Duchemin sets forth varied bases for § 1983 liability against the Village.  Although not entirely clear from the pleading or his legal

memorandum, the Court discerns the following alleged governmental acts that seem to form the factual predicate for the second cause of action: (i) Larsen allegedly threatened Dr. Gibson, asking him not to clear the Plaintiff to return to work; (ii) the Village allegedly "turned" Dr. Gibson into a government witness and "coerced" him to furnish a report that resulted in Duchemin's unpaid leave; (iii) the Village allegedly "compelled disclosure" of the Plaintiff's prescription information from a local pharmacy; (iv) the Village allegedly reported to the DMV that Duchemin had been diagnosed with narcolepsy; and (v) the Village allegedly invoked Civil Service § 72 to temporarily terminate the Plaintiff's pay without affording him due process, including notice and a hearing.

Based on the allegations outlined above, the second cause of action asserts § 1983 liability arising from an alleged deprivation of Duchemin's Fourteenth Amendment rights. However, as the Village points out, in his opposition brief, the Plaintiff attempts to frame certain of these acts as also constituting violations of his constitutional privacy interest, a Fourth Amendment claim. To the extent this legal theory is not specifically pled in the amended complaint, the Court agrees with the Village that Duchemin's reliance upon it in his legal memorandum is improper. See Derrick Storms v. United States, 13-cv-811, 2015 U.S. Dist. LEXIS 31998, a *56-*57 (E.D.N.Y. Mar. 16, 2015) (noting that "Plaintiffs cannot amend their pleadings through their motion papers in an effort to circumvent dismissal"; collecting supporting cases). Accordingly, the Court will limit is evaluation of the pleading's

sufficiency to the four corners of the amended complaint, which include a singular constitutional claim implicating the Fourteenth Amendment.

### 1. The Applicable Constitutional Law

"For a plaintiff to establish a claim cognizable under section 1983 he must show that defendants deprived him of a right secured by the Constitution and laws of the United States, and that any such deprivation was achieved under color of law." Dower v. Dickinson, 700 F. Supp. 640, 643 (N.D.N.Y. 1988) (citing Adickes v. Kress & Co., 398 U.S. 144, 150, 90 S. Ct. 1598, 26 L. Ed. 142 (1970)). With regard to this motion, the parties do not appear to dispute that any of the complained-of actions were taken under color of law. Accordingly, the Court need not address that prong of the relevant legal standard. Rather, whether Duchemin has stated a cognizable § 1983 claim will turn on whether he has plausibly alleged the violation of a right secured by the Constitution and laws of the United States.

"Generally, defamation is an issue of state, not of federal constitutional, law." Burgos Vega v. Lantz, 596 F.3d 77, 81 (2d Cir. 2010) (citing Lauro v. Charles, 219 F.3d 202, 207 (2d Cir. 2000)). "However, under limited circumstances, federal constitutional relief is available for defamation committed by government officials." Id., (citing Paul v. Davis, 424 U.S. 693, 699-701, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976))).

Thus, "[t]he Second Circuit 'has recognized that loss of one's reputation [*e.g.*, as a result of defamation] can . . . invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest, such as

government employment.' " <u>Blythe v. City of New York</u>, 963 F. Supp. 2d 158, 174 (E.D.N.Y. 2013) (quoting <u>Guerra v. Jones</u>, 421 F. App'x 15, 18 (2d Cir. 2011). To prevail on his claim that he was deprived of a constitutional interest in his reputation without due process of law, Duchemin must plausibly allege "(1) the utterance of a statement that is injurious to reputation, that is capable of being proved false, and that is claimed to be false; and (2) some tangible and material state-imposed burden in addition to the stigmatizing statement." <u>Id.</u> (citing <u>Rausa v. Bd. of Educ. of the North Syracuse Cent. Sch. Dist.</u>, 11-cv-1152, 2012 U.S. Dist. LEXIS 38652, at *29-*30 (N.D.N.Y. Mar. 21, 2012)). "Simple damage to reputation does not give rise to a liberty interest claim; rather, the damage must be accompanied by some significant deprivation, such as dismissal from government employment or alteration of some other right or status recognized by state law." <u>Storman v. Klein</u>, 09-cv-0338, 2009 U.S. Dist. LEXIS 34628, at *54-*55 (S.D.N.Y. Apr. 20, 2009) (Report and Recommendation) (internal citations and quotation marks omitted). In this case, Duchemin's theory is that the alleged dissemination of a false narcolepsy diagnosis constituted the stigma, and his placement on involuntary unpaid leave without notice and hearing under Civil Service Law § 72 constituted the additional deprivation, the "plus."

With regard to the second prong of the stigma-plus test – namely, a state-imposed burden or alteration of status – the appropriate analysis to be applied depends on whether the alleged burden was the result of random and unauthorized

governmental acts, or whether it was pursuant to an established state procedure.

The distinction has been described as follows:

> § 1983 allows plaintiffs with federal or constitutional [Due Process] claims to sue in federal court without first exhausting state judicial or administrative remedies. . . . [but] there is no constitutional violation (and no available § 1983 action) when there is an adequate post-deprivation procedure to remedy a random, arbitrary deprivation of property or liberty. In cases where the state actor engaged in random and unauthorized acts, an Article 78 proceeding constitutes a wholly adequate post-deprivation hearing for due process violations.

> In contrast, when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing. . . . Under those circumstances, the availability of post-deprivation procedures will not, ipso facto, satisfy due process. Affording the employee an opportunity to respond prior to termination would impose neither a significant administrative burden nor intolerable delays. The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. . . . The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.

Storman, 2009 U.S. Dist. LEXIS 34628, at *66-*70 (internal citations and quotation marks omitted) (underscore in original).

In this case, the state-imposed burden is not alleged to have been a random and unauthorized governmental act. Rather, Duchemin alleges that his involuntary unpaid leave was effectuated pursuant to Civil Service Law § 72, an established state procedure. Therefore, in order to pass muster under Rule 12(b)(6), the amended complaint must plausibly allege: (i) a false and defamatory statement that was disseminated widely enough to injure Duchemin's reputation or standing

in the community; and (ii) that he (a) was dismissed from government employment or (b) had some other right or status recognized by state law altered, without oral or written notice of the charges against him, an explanation of the Village's evidence, and an opportunity to present his side of the story. These considerations will be discussed more fully below.

### 2. As to Whether the Plaintiff has Plausibly Alleged a Stigmatizing Statement

As noted above, in cases of public employment, persons have a recognized liberty interest in being free of stigmas attached to their good name. See Fitzgerald v. Sabol, 92-cv-8294, 1994 U.S. Dist. LEXIS 12273, at 16 (S.D.N.Y. Sept. 1, 1994) (citations omitted). Thus, to plausibly allege the first prong of a stigma-plus violation, "a plaintiff must demonstrate that the government made stigmatizing statements that call into question his 'good name, reputation, honor, or integrity.'" Storman, 2009 U.S. Dist. LEXIS 34628, at *55-*56 (quoting Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 446 (2d Cir. 1980)). "'[S]tigmatizing allegations . . . include charges going to professional competence when the charges are sufficiently serious.'" Id. at *56 (quoting Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 632 (2d Cir. 1996), cert. denied, 519 U.S. 1150, 117 S. Ct. 1083, 137 L. Ed. 2d 218 (1997)). "However, 'statement[s] that an employee poorly performed her duties or acted in an improper manner,' or that describe behavior or actions that are 'within the employee's power to correct,' do not generally qualify as stigma for constitutional purposes." Id. (internal citations omitted). As the Second Circuit has noted:

> [A]n employee seeking to show . . . that his termination was a
> deprivation of "liberty" must demonstrate that the government had
> made a charge "that might seriously damage his standing and
> associations in the community" or had imposed "a stigma or other
> disability that foreclosed his freedom to take advantage of other
> employment opportunities." 408 U.S. at 573, 92 S. Ct. at 2707. The
> [Supreme] Court made clear that by the latter phrase it meant
> something more than the disadvantage inevitably entailed when a
> person "simply is not rehired in one job but remains as free as before to
> seek another." 408 U.S. at 575, 92 S. Ct. at 2708. "Mere proof, for
> example, that his record of nonretention in one job, taken alone, might
> make him somewhat less attractive to some other employers would
> hardly establish the kind of foreclosure of opportunities that amount to
> a deprivation of 'liberty' " 408 U.S. at 574 n.13, 92 S. Ct. at 2708.

Russell v. Hodges, 470 F.2d 212, 216 (2d Cir. 1972).

In this case, the amended complaint alleges that the Village attributed a false narcolepsy diagnosis to the Plaintiff; disseminated that falsehood to the DMV; and utilized it as a basis for placing him on involuntary unpaid leave. Thus, the relevant inquiry is whether these actions, if true, rise to an actionable level under the relevant constitutional standards outlined above. The Court concludes that they do not.

Initially, the Court concludes that the allegedly false narcolepsy diagnosis does not call into question the Plaintiff's good name, reputation, honor, or integrity, as a matter of law. However, given the Plaintiff's unique position as a 911 dispatcher, the Court is of the view that such a diagnosis, particularly if it is false, could potentially go to Duchemin's professional competence. However, the amended complaint falls short of stating enough plausible facts to persuade the Court that this possibility is sufficiently serious to assume constitutional dimensions.

In this regard, the Court notes that the Plaintiff has not sufficiently pleaded a threshold requirement to his stigma-plus claim, namely, that the subject narcolepsy diagnosis is demonstrably false. See Demartino v. New York, 12-cv-3319, 2013 U.S. Dist. LEXIS 89188, at *25-*26 (E.D.N.Y. June 24, 2013), aff'd, 586 F. App'x 68 (2d Cir. 2014). In particular, Duchemin does not materially deny that Dr. Gibson furnished a report to the Village, which indicated a diagnosis of narcolepsy. See Am. Compl. ¶ 72 (conceding that the Molinaro Letter, upon which the Village relied in placing him on unpaid leave, cited a report by Dr. Gibson asserting a diagnosis of narcolepsy). Rather, the Plaintiff simply alleges that this diagnosis is inconsistent with the diagnosis of another treating physician, Dr. Amin, who diagnosed the Plaintiff with "sleep apnea and severe daytime sleepiness." Id.

Assuming, for present purposes, that there is a material difference between narcolepsy and "severe daytime sleepiness"; and further assuming the truth of the Plaintiff's allegations, the Court is of the view that they do not plausibly plead "the utterance of a statement that is . . . capable of being proved false, and that is claimed to be false." Blythe, 963 F. Supp. 2d at 174. In fact, beyond the Plaintiff's description of Dr. Gibson's report as "hearsay" and "unsupportable," there is no factual basis for concluding that it is false; or, for that matter, that Dr. Amin's diagnosis is correct. Thus, because Duchemin has not adequately alleged falsity, he is not entitled to relief on his stigma-plus claim. See Demartino, 2013 U.S. Dist. LEXIS 89188, at *26 (collecting cases).

However, even assuming the falsity of the narcolepsy diagnosis, the Court is not persuaded that the Village's conduct in sharing such information with the DMV constitutes sufficiently wide dissemination of the falsity to have damaged Duchemin's standing in the community. See Griffin v. City of New York, 880 F. Supp. 2d 384 (E.D.N.Y. July 31, 2012) ("The thrust of plaintiff's substantive due process claim is that the stigmatizing accusations against him both led to his constructive termination and were disseminated widely enough to damage his standing in the community" (citation omitted)). Rather, the amended complaint alleges only that the Village prepared a "report" to the DMV, which referenced the Plaintiff's purported narcolepsy. According to the DMV's official agency website, of which this Court takes judicial notice, such reports are regularly submitted as part of the agency's Driver Re-Evaluation Program.

In particular, under New York Vehicle & Traffic Law ("NYVTL") § 506(1), "[i]f the Commissioner [of Motor Vehicles] has 'reasonable grounds' to believe that a person holding a license is not qualified to drive a motor vehicle, the Commissioner may require such person submit to an examination to determine their qualifications." According to the DMV's website, " '[r]easonable grounds' means that the DMV must have a 'specific reason' related to driving performance why a driver needs to be contacted for driving re-evaluation. A 'specific reason' is a driving incident, behavior, action *or other cause reported to the DMV by a physician, a police officer, or someone who knows or has observed the driver.*' " See DMV's Driver Re-Evaluation Program, New York State Department of Motor Vehicles,

available at, dmv.ny.gov/driver-license/dmv-re-evaluation (last visited Oct, 26, 2015) (emphasis supplied). Upon receiving such a report, "[a] license examiner from the DMV Testing and Investigation Unit reviews the form to determine if there is a reason to re-evaluate the driver" and if so, "the DMV examiner sends the driver a certified letter to request the driver to come to the DMV office for an interview" and, depending on the nature of the report, "may also indicate that the driver is required to bring" a statement from a physician regarding the medical condition of the driver.

Although not set forth with any detail, the amended complaint appears to allege that the Village's actions substantially comply with this procedure. In particular, Duchemin alleges that: fearing his medical condition "would endanger the public," see Pl. Opp. Memo at 12, the Village reported to the DMV that he had been diagnosed with narcolepsy, see Am. Compl. ¶ 95; that the DMV Medical Review Unit required him to produce a physician's statement establishing otherwise, see id. ¶ 96; that he then underwent additional sleep studies at Mather Hospital in Port Jefferson, see id. ¶ 99; and that, ultimately, he provided satisfactory documentation to the DMV and his license was not suspended, see id. ¶ 100. Based on these allegations, there is no rational basis to conclude that the information allegedly shared with the DMV was otherwise made publicly available or disseminated by the Village.

However, more importantly, even if the amended complaint had sufficiently alleged widespread dissemination of a false diagnosis, it does not state any facts

relating to specific reputational harm purportedly suffered by the Plaintiff. On the contrary, the amended complaint merely states, in conclusory fashion, that Duchemin was "subjected to an attack on his rights to liberty by the [Village], which engineered an incredibly duplicitous attack on his reputation, good name and character, destroyed the very character of the physician/patient relationship, and trumped up a bogus diagnosis, which it then shared with an important state agency [the DMV]." Id. ¶ 90. Generally, in the absence of any supporting factual detail, this kind of "unadorned, the-defendant-harmed-me accusation" would be insufficient to plausibly state a claim for relief. Twombly, 550 U.S. at 555.

Moreover, Duchemin specifically alleges that, despite the Village's actions, his driver's license was not suspended and he was eventually permitted to return to work. See Am. Compl. ¶¶ 65-66, 100. In light of these statements, from the face of the complaint the Court cannot identify any stigmatization or reputational harm that is sufficient to give rise to a constitutional violation. See Bertram v. Metro. Transp. Auth., 13-cv-338, 2014 U.S. Dist. LEXIS 25715, at *19 (S.D.N.Y. Feb. 26, 2015) (dismissing a stigma-plus claim where the plaintiff made "conclusory" and "bare allegation[s] of damage to reputation and career" without "say[ing] [any]thing concrete about whether or how the alleged damage affected any tangible interest of Plaintiff's"); Trivedi v. Thayer, 97-cv-1377, 1998 U.S. Dist. LEXIS 17990, at *19 (S.D.N.Y. Nov. 16, 1998) (noting that actionable statements "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that

employee's continued ability to practice his or her profession" (quoting <u>Donato</u>, 96 F.3d at 630-31)), <u>aff'd</u>, 1999 U.S. App. LEXIS 13973 (2d Cir. 1999).

Further, Duchemin's bare, one-sentence assertion that, upon returning to work, he was subjected to a hostile work environment, without any supporting factual detail, is insufficient to compel a different result. <u>See</u> <u>Buckley v. New York</u>, 959 F. Supp. 2d 282, 300 (E.D.N.Y. 2013) (Spatt, J.) (finding "that the Plaintiff ha[d] failed to meet his 12(b)(6) burden in regards to a hostile work environment action" because, similar to this case, there was "no specific allegation made or example proffered of a hostile work environment" and the plaintiff had pled only "vague conclusory allegations" relating to the defendants' "contribution to the workplace atmosphere").

Based on the foregoing, the Court finds that the amended complaint fails to plausibly allege that the government made and widely disseminated a false and stigmatizing statement about the Plaintiff that caused injury to his reputation or standing in the community. Accordingly, Duchemin has not sufficiently pled the "stigma" aspect of his "stigma-plus" claim, and the second cause of action is dismissed. To the extent the Village seeks to dismiss the second cause of action on this ground, its motion is granted.

Having so held, at this time, the Court need not consider whether Duchemin has plausibly alleged the second prong of the "stigma-plus" standard, namely, that he was deprived of notice and a hearing before being placed on leave under Civil Service Law § 72.

### III. Conclusion

For the reasons set forth in this opinion, the Court grants the Village's motion to dismiss the amended complaint.

The Clerk of the Court is directed to close this case.

**SO ORDERED**

Dated:      Central Islip, New York
              October 31, 2015          */s/ Arthur D. Spatt*
                                        ARTHUR D. SPATT
                                        United States District Judge